**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SEHER AYGUN, *Petitioner*, v. LUIS SOTO, in his official capacity as Warden of Delaney Hall Detention Facility, et al., *Respondents*. | No. 25-cv-18540 (MEF) <br><br> **OPINION and ORDER** |

\* \* \*

Under federal law, noncitizens who are detained pending removal are generally (i) granted a bail hearing before an immigration judge if they have been in the United States for a while,[1] or (ii) not granted a bail hearing if they have just arrived here, say on an international flight.[2] See Y.Z. v. Soto, 2025 WL 3564652, at *1-2 (D.N.J. Dec. 12, 2025).[3]

A July 2025 executive branch memo purported to change things --- so that even detained noncitizens who have been in the United States (people in category (i)) will no longer get a bail hearing. See Bethancourt Soto v. Soto, 2025 WL 2976572, at *2-3, *2 n.1 (D.N.J. Oct. 22, 2025).

---

[1] See 8 U.S.C. § 1226(a).

[2] See 8 U.S.C. § 1225(b).

[3] The description of the law in the text boils things down and therefore does not include some important caveats. For a fuller statement of the law in this area, see, for example, Y.Z., 2025 WL 3564652, at *1 n.2, *2 n.4.

In response, some noncitizens have filed habeas corpus petitions, claiming that they are being held in custody without bail hearings, and that this breaks the law.

Federal officials, the argument goes, are picking and choosing. They are using the powers Congress gave them, to arrest and detain. But they are ignoring the check that Congress put on that power, the requirement of a bail hearing before an immigration judge.

In this district, the habeas cases have spun off uniform results:

> In New Jersey . . . . [t]he cases have gone before many different judges. But in no case has a federal judge in this state concluded that the July 2025 policy has it right --- that mandatory detention, with no possible bond hearing, is required as to all noncitizens, regardless of whether they were living in the United States before being detained. . . . Rather, in every one of the . . . cases, the judge has held that a noncitizen who has been here for a while must be (i) given a bond hearing . . ., or (ii) released . . . .

Y.Z., 2025 WL 3564652, at *2 (citations omitted).

The question here is whether district courts in this circuit can continue to consider these sorts of cases.

\* \* \*

On January 15, the Third Circuit decided Khalil v. President, United States of America, 164 F.4th 259 (3d Cir. 2026).

There, federal officials were seeking to remove a noncitizen from the United States under the Nation's immigration laws. See id. at 266-67. The noncitizen was detained and filed a habeas petition. See id. at 266. The district court took jurisdiction. See id. at 267.

On appeal, the Third Circuit ruled that this was error. See id. at 273.

Among other things, it held that under a jurisdiction-stripping statute, see 8 U.S.C. § 1252(b)(9) ("Section 1252(b)(9)"), the district court had no role to play. See Khalil, 164 F.4th 259 at 273. Section 1252 pulled away the district court's jurisdiction over the petitioner's case. See id.

2

Therefore, Khalil held, the petitioner was required to press any challenge via a different route --- (1) before an immigration judge, (2) on to the Board of Immigration Appeals, and then (3) up to the federal court of appeals, via a petition for review of any final order of removal that might ultimately be entered against the petitioner by the immigration courts. See id. at 274 (citing E.O.H.C. v. Sec'y, U.S. Dep't of Homeland Sec., 950 F.3d 177, 180 (3d Cir. 2020)).

Khalil, in short, held that under Section 1252(b)(9) there was no district court jurisdiction over the detained noncitizen's claims.

So is there district court jurisdiction for other detained noncitizens?

\* \* \*

The day after the Khalil decision, the Court ordered the Respondents to "explain the implications of Khalil for the Court's subject-matter jurisdiction in this case." Aygun v. Soto, 2026 WL 136151, at \*1 (D.N.J. Jan. 16, 2026).[4]

Legal papers were prepared, and the case is now fully submitted.

The parties agree that, as construed in Khalil, Section 1252(b)(9) does not take away this Court's jurisdiction. See Respondents' January 26, 2026 Letter ("January 26 Letter") (ECF 18); Petitioner's January 27, 2026 Letter (ECF 19); Respondents' February 2, 2026 Letter ("February 2 Letter") (ECF 21).

But the Court is required to ask for itself, see Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) (citations omitted), and does so here.

\* \* \*

---

[4] The Court entered orders along the same lines in around a dozen other cases that raise similar issues. See, e.g., Sulugui Chiyal v. Genalo, No. 2:26-cv-00729-MEF (ECF 13); Batista Vaz v. Dorr, No. 2:26-cv-00545-MEF (ECF 8). And note that, per the Respondents, a substantial fraction of the district judges in New Jersey made similar requests for post-Khalil jurisdictional briefing. See Respondents' January 21, 2026 Letter (ECF 14) at 1 ("at least seven other courts in this District [have] order[ed] supplemental briefing from [the] Respondents regarding the effect of Khalil").

As construed in Khalil, does Section 1252(b)(9) remove jurisdiction from a district court, so that it cannot decide whether a detained noncitizen, purportedly held under 8 U.S.C. § 1225(b), is actually held under 8 U.S.C. § 1226(a) and is therefore entitled to a bail hearing?

The Respondents state that this is a "complex" question. See Respondents' January 21, 2026 Letter ("January 21 Letter") (ECF 14) at 1.[5]

They emphasize that, under Khalil, "claims that raise legal or factual questions that can later be addressed [by a federal court of appeals] via [a petition for review] . . . fall within [Section] 1252(b)(9)'s jurisdictional bar."  January 26 Letter at 2.

That is, if a court of appeals will be called upon down the road to take up a particular question on a petition for review of an immigration-court final order of removal --- then the district court has no jurisdiction to take up that same question for itself, in the habeas context.  See id.

Sometimes, applying this rule may raise "complex" questions.  It may not always be easy to foretell whether the question that a noncitizen wants reviewed now, by the district court on habeas, will be a question that the federal court of appeals will later take up on a petition for review.[6]

But here, there are no meaningful complexities.

The reason, among others, is this: in Jennings v. Rodriguez, 583 U.S. 281 (2018), three Justices (Justice Alito, Chief Justice Roberts, and Justice Kavanaugh) explicitly held that Section 1252(b)(9) does not remove jurisdiction over a challenge very

---

[5]  The Department of Justice represents the Respondents.  Its position has not always been consistent.  Compare January 26 Letter (the DoJ arguing that, under Khalil, Section 1252(b)(9) does not strip jurisdiction), with Coronel-Hernandez v. Woosley, 2026 WL 227011, at *2 (W.D. Ky. Jan. 28, 2026) (rejecting a DoJ argument that, under Khalil, Section 1252(b)(9) does strip jurisdiction).

[6]  Cf. Khalil, 164 F.4th at 276 (quoting Massieu v. Reno, 91 F.3d 416, 422 (3d Cir. 1996) for the proposition that district courts lack jurisdiction over "a 'matter[ ] on which the validity of the final order [of removal entered by the Board of Immigration Appeals] is [or will be] contingent'").

much like this one --- a challenge to whether a detained noncitizen is legally entitled to a bail hearing. See id. at 291-95.

The just-referenced part of Justice Alito's Jennings opinion is directly on point.

\* \* \*

Is Justice Alito's on-point opinion controlling?

Where, as in Jennings, the Supreme Court issues a "fragmented" decision, "and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." Marks v. United States, 430 U.S. 188, 193 (1977) (cleaned up).

Khalil held that Justice Alito's Jennings opinion was narrower than another three-Justice opinion, authored by Justice Breyer --- and therefore, Khalil held, it is Justice Alito's narrower opinion that must be counted as the Supreme Court's opinion under Marks. See Khalil, 164 F.4th at 277-78.

Accordingly, Justice Alito's opinion governs here.

Justice Alito's opinion governs as to the implicit aspects of its reasoning. Khalil so held. See id.

It follows that Justice Alito's opinion must surely also govern as to the explicit parts of its holding --- that is, those parts of the Justice Alito opinion, alluded to above, that are directly on-point because they reach and resolve the precise question here, the question of whether Section 1252(b)(9) removes jurisdiction over claims that a noncitizen is legally entitled to a bail hearing.[7]

---

[7] The a fortiori ("must surely") point in the text may need some unpacking. Khalil ruled that Justice Alito's three-Justice Jennings opinion was narrower because it held that Section 1252(b)(9) did not strip jurisdiction over the particular class of cases before the Court. See Khalil, 164 F.4th at 278. By contrast, Khalil noted, Justice Breyer's three-Justice Jennings opinion was broader because it held that Section 1252(b)(9) did not strip jurisdiction over a wider class of cases --- that is, over all pre-order-of-removal cases. See id. From the implicit approach to the statute "strongly suggested" by Justice Alito's Jennings opinion, id. at 277, Khalil took away a principle (that

\*   \*   \*

Bottom line: Section 1252(b)(9), as construed in Khalil, does not strip jurisdiction from a district court, so that the district court can decide in the habeas context whether a detained noncitizen, purportedly held under 8 U.S.C. § 1225(b), is actually held under 8 U.S.C. § 1226(a) and is therefore entitled to habeas relief.

\*   \*   \*

IT IS on this 5th day of February, 2026, **SO ORDERED**.

                                             Michael E. Farbiarz, U.S.D.J.

---

Section 1252(b)(9) can apply to pre-order-of-removal cases) --- and then, based in part on that principle, ruled that Justice Alito's opinion had abrogated Chehazeh v. Attorney General, 666 F.3d 118 (3d Cir. 2012), which had held, like Justice Breyer's three-Justice Jennings opinion, that Section 1252(b)(9) does not apply to pre-order-of-removal cases. See Khalil, 164 F.4th at 278. That is, Khalil suggests (a) that Justice Alito's three-Justice opinion controls because it is narrower than Justice Breyer's opinion, and, because Justice Alito's narrower opinion controls, (b) the broader principles implicit in Justice Alito's opinion also controls (including a principle --- that Section 1252(b)(9) applies before the entry of an order of removal --- that may have been precisely as broad as the mirror-image principle in Justice Breyer's opinion, that Section 1252(b)(9) does not apply before the entry of an order of removal). Given that, under Khalil, the broad principle in Justice Alito's opinion controls, it follows that Justice Alito's opinion must surely control as to its narrow holding --- that is, its holding that Section 1252(b)(9) does not strip jurisdiction over challenges to whether bail hearings are legally required. After all, Justice Alito's narrow holding rests on distinct and especially sturdy footing --- because it was that holding's narrowness that, under the Marks rule, made Justice Alito's opinion authoritative in the first place. Cf. id. ("[Justice Alito's] narrower reading defines the proper scope of § 1252(b)(9)"); Richard M. Re, Beyond the Marks Rule, 132 Harv. L. Rev. 1942, 1982 (2019).